**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LIGHT ENERGY INSTALLERS, LLC** *et al*,

              **Plaintiffs,**

vs.                                                  1:16-MC-36
                                                        (MAD/CFH)

**KYOCERA INTERNATIONAL, INC., KYOCERA SOLAR, INC.,**

              **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BOND, SCHOENECK LAW FIRM - SYRACUSE**<br>One Lincoln Center<br>Syracuse, New York 13202<br>Attorneys for Plaintiffs | **BRIAN J. BUTLER, ESQ.**<br>**SARA C. TEMES, ESQ.** |
| **LOEB, LOEB LAW FIRM - NYC OFFICE**<br>345 Park Avenue<br>New York, New York 10154-0037<br>Attorneys for Defendants | **BETHANY SIMMONS, ESQ.**<br>**C. LINNA CHEN, ESQ.**<br>**WILLIAM M. HAWKINS, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## DECISION AND ORDER

## I. INTRODUCTION

In May 2015 and August 2015, Plaintiffs New York Light Energy, LLC, Light Energy Administrative Services, LLC, Light Energy Partners Group, LP, U.S. Light Energy, LLC, Light Energy Installers, and Light Energy Management II, LLC (collectively, the "Light Entities") filed petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the Bankruptcy Court for the Northern District of New York. *See* Dkt. No. 1 at 11. On November 11, 2015, the Light Entities initiated an adversary proceeding by filing a complaint

against Defendants Kyocera International, Inc. and Kyocera Solar, Inc. (collectively "Kyocera"). *See id.* On January 22, 2016, Kyocera filed an answer and counterclaims and on March 24, 2016, Kyocera filed amended counterclaims against the Light Entities. *See id.* at 11-12. On April 28, 2016, Kyocera filed a motion to withdraw the reference of the adversary proceeding to this Court. *See id.* at 1. While the Light Entities initially opposed withdrawal, *see* Dkt. No. 3, on December 12, 2017, the administrators for the Light Entities withdrew their opposition to Kyocera's motion to withdraw the reference, *see* Dkt. No. 8.

Currently before the Court is Kyocera's motion to withdraw the reference. For the following reasons, the motion is denied.

## II. BACKGROUND

Beginning in 2013, Kyocera and the Light Entities entered into business in order to take advantage of federal solar panel tax credits. *Light Energy Installers, LLC v.Kyocera Int'l, Inc. (In re N.Y. Light Energy, LLC)*, No. 15-11121, Dkt. No. 1 at ¶ 27 (Bankr. N.D.N.Y. Nov. 11, 2015). Plaintiff Light Energy Management II, LLC ("LEM II") created Light Energy Fund II, LLC ("Fund II").[1] *See id.* at ¶ 28. Fund II owned 97.5% of NKJV I, LLC ("NKJV"), a New York limited liability company, and LEM II owned the remaining 2.5% of NKJV. *See id.* at ¶ 34. On October 14, 2013, Kyocera International, Inc. ("KII") purchased 99% of Fund II's membership for $15,369,000. *See id.* at ¶¶ 30-31. LEM II kept the remaining 1% interest of Fund II. *See id.* at ¶ 31.

As part of the agreement, Fund II would purchase 8.5 megawatts of photovoltaic systems from NKJV at a rate of $4.41 per installed watt for rooftop mounted systems and $5.41 per installed watt for ground mounted systems. *See id.* at ¶¶ 33, 39. NKJV would purchase the

---

[1] For clarity, the Court notes that despite its name, Fund II is not one of the Light Entities.

2

photovoltaic systems from Light Energy Installers, LLC, for $2.87 per installed watt for rooftop systems and $3.87 per installed watt for ground mounted systems—$1.54 less than what Fund II paid per installed watt. *See id.* at ¶ 40. NKJV—which had no employees, expenses, or expenditures—was able to pay almost the entire price difference of $1.54 per installed watt back to its shareholders, which meant most went back to Fund II. *See id.* at ¶¶ 42-45. This arrangement allowed KII to increase its capital account by reinvesting the dividends, *see id.* at ¶ 59, which amplified its return from a 30% federal tax credit offered through the federal energy investment tax credit program, authorized under 26 U.S.C. § 48, *see id.* at ¶¶ 24-25. Whether by design or defect, this scheme resulted in Light Energy Installers losing approximately $4,500,000 and forcing the Light Entities to seek relief under Chapter 11 of the Bankruptcy Code. *See id.* at ¶¶ 2, 74. On October 20, 2016, the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. *See* Dkt. No. 8.

On November 11, 2015, the Light Entities filed a complaint against Kyocera in the Bankruptcy Court alleging fraudulent transfers pursuant to Sections 548 and 550 of the Bankruptcy Code, fraudulent conveyances pursuant to Section 544(b)(1) of the Bankruptcy Code and Sections 273, 274, and 275 of the New York Debtor and Creditor Law, equitable subordination pursuant to 11 Section 510(c) and 105(a) of the Bankruptcy Code, and an objection to claims pursuant to Section 502 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3007. *In re N.Y. Light Energy, LLC*, No. 15-11121, Dkt. No. 1 at ¶¶ 89-122 (Bankr. N.D.N.Y. Nov. 11, 2015). The Light Entities' complaint alleged, in part, that KII paid Light Energy Installers well below its costs per installed watt, looting Light Energy Installers and leaving its creditors in the lurch. *See id.* at ¶¶ 102-105.

On January 22, 2016, Kyocera filed an answer and counterclaims against the Light Entities. *See In re N.Y. Light Energy, LLC*, No. 15-11121, Dkt. No. 9 (Bankr. N.D.N.Y. Jan. 22, 2016). On March 4, 2016, Kyocera filed amended counterclaims alleging thirty-seven grounds for relief against the Light Entities and its debtors. *See In re N.Y. Light Energy, LLC*, No. 15-11121, Dkt. No. 18 (Bankr. N.D.N.Y. Mar. 4, 2016). Included in Kyocera's list of grievances were counterclaims for breach of contract, multiple variations of fraud, federal securities violations, negligence, gross negligence, unjust enrichment, breach of fiduciary duty, general partner liability, indemnity, contribution, attorneys fees and costs, setoff and recoupment, and failure to make payments under Arizona state law. *See id.*

On April 27, 2016, Kyocera initiated a complaint against Alexander Lieb, Chancellor Lieb (collectively, the "Liebs"), Keith Goldstein ("Goldstein"), Fund II, and NKJV in this Court. *See Kyocera Int'l, Inc. v. Lieb*, No. 16-cv-491, Dkt. No. 1 (N.D.N.Y. Apr. 27, 2016). The Liebs and Goldstein were the owners of the Light Entities and controlled them until the Chapter 11 filing. *See id.* at ¶ 2. Kyocera alleged that "due to the failed, negligent, intentional, fraudulent and/or bad faith conduct of the Liebs and Goldstein," Kyocera lost much of the money it invested in Fund II. *Id.* at ¶ 1. On September 6, 2017, this Court issued a stipulation and order dismissing the case. *See Kyocera Int'l, Inc. v. Lieb*, No. 16-cv-491, Dkt. No. 63 (N.D.N.Y. Sept. 6, 2017).

In its motion to withdraw refrence, Kyocera argues that because the Bankruptcy Court will be forced to address the tax and securities issues, this Court must withdraw the reference under 28 U.S.C. § 157(d). *See* Dkt. No. 1 at 23. Further, even if a mandatory withdrawal is not warranted, the Court should exercise the discretion granted under 28 U.S.C. § 157(d) to withdraw the reference. *See id.* at 25-26.

### III. DISCUSSION

**A.     Mandatory Withdrawal**

28 U.S.C. § 157(d) includes a mandatory withdrawal provision that requires district courts to "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  The Second Circuit construes this provision narrowly. *See In re Connie's Trading Corp.*, No. 14 CIV. 376, 2014 WL 1813751,*4 (S.D.N.Y. May 8, 2014) (citation omitted).  "Withdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  *Shugrue v. Airline Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (citations omitted).  A "'bare contention' that 'non-bankruptcy law is dispositive or in conflict with the Bankruptcy Code' is insufficient to meet the standard for mandatory withdrawal."  *In re Connie's Trading Corp.*, 2014 WL 1813751, at *4 (quotation and other citations omitted) (citations omitted).  "Mandatory withdrawal is . . . appropriate where the case would require the bankruptcy court to engage itself in the intricacies of non-bankruptcy law[.]"  *In re Enron Corp.*, 388 B.R. 131, 136 (S.D.N.Y. 2008).  Conversely, mandatory withdrawal is inappropriate where the claims only require a "routine application of that law or the straightforward application of a federal statute to a particular set of facts."  *Id.*

Kyocera claims that withdrawal is mandatory because the Light Entities' claims and Kyocera's defense will require the Bankruptcy Court to analyze the federal tax credit program. The Light Entities assert that Kyocera only participated in this venture because Light Energy

5

Installers transferred its profits to Fund II in order to increase Kyocera's tax benefits. Kyocera argues that this will require the court

> to undertake significant interpretation of the federal tax laws, including an analysis of the extent of the benefits available to and enjoyed by Kyocera International, whether the tax benefits were transferrable, whether [Light Energy Installers] was actually able to and did transfer the tax benefits to Kyocera International, whether [Light Energy Installers] could have used the tax benefits itself, and the extent to which [Light Energy Installers'] alleged transfer of the Cash Transfer Amount affected the tax benefits enjoyed by Kyocera International.

Dkt. No. 5 at 8.

Even if true, Kyocera has not established grounds for mandatory withdrawal. The mere fact that the tax issues will be dispositive is insufficient to trigger a mandatory withdrawal. *See In re Connie's Trading Corp.*, 2014 WL 1813751, at *4. Kyocera has not shown that the application of tax law in this case will be anything more than a routine application of the tax code. *See In re Enron Corp.*, 388 B.R. at 136. As such, the tax matter at issue here is not sufficient to require the Court to withdraw the proceeding from the Bankruptcy Court. *See Bernstein v. Greenpoint Sav. Bank*, 149 B.R. 760, 764-65 (Bankr. E.D.N.Y. 1993) (conducting extensive analysis of tax code).

Kyocera also argues that their counterclaims trigger mandatory removal because it will require the Bankruptcy Court to adjudicate securities issues. Kyocera asserts that the Bankruptcy Court would be required to

> determine whether the Kyocera Note and the Class B Membership Interests are "securities" subject to federal securities law. Then, the court must determine whether misrepresentations were made, whether the misrepresentations were material within the meaning of federal securities laws, whether the misrepresentations were made with the requisite scienter, and whether the misrepresentations were made in connection with the purchase or sale of any security.

6

Dkt. No. 5 at 11.

This argument falls victim to the same flaw as Kyocera's tax argument. Kyocera only claims that the Bankruptcy Court would have to apply securities law, it does not assert that this case would require more than a run-of-the-mill application of the law. While it is true that an application of federal securities law will require the Bankruptcy Court to engage in a multi-step analysis, bankruptcy courts are fully competent to engage in this kind of an endeavor. *See, e.g.*, *In re Kummerfeld*, 444 B.R. 28, 43-50 (Bankr. S.D.N.Y. 2011) (analyzing a multi-element securities claim). As such, the securities issues do not mandate withdrawal.

**B.    Permissive Withdrawal**

28 U.S.C. § 157(d) provides that a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." "While the statute does not define the term 'cause,' courts in the Second Circuit have generally focused on factors such as judicial economy, uniformity in the administration of bankruptcy law, reduction of forum shopping, and jury trial considerations." *In re Iannacchino*, No. 14-22077, 2018 WL 1009279, \*2 (S.D.N.Y. Feb. 20, 2018) (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993)). At the "infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy." *Gucci by Armstrong v. Gucci*, No. 96 CIV. 8216, 1997 WL 122838, \*1 (S.D.N.Y. Mar. 17, 1997). "[T]he interests of judicial economy will be well served" by denying withdrawal where the Bankruptcy Court has already developed "extensive knowledge of the complex underlying transactions and occurrences." *Id.* (quotation omitted). Even where a district court may have to engage in *de novo* review of the bankruptcy court's pre-trial preparations or where the district court will inevitably conduct a jury trial,

7

allowing the Bankruptcy Court to oversee the pre-trial matters can be a more efficient use of judicial resources where the bankruptcy court is more familiar with the facts at issue in the case. *See id.* (citing *In re Kenai*, 136 B.R. 59, 61 (S.D.N.Y. 1992); *In re Adelphi Institute, Inc.*, 112 B.R. 534, 539 (S.D.N.Y. 1990)).

Here, the interest of judicial economy would, at this time, be best served by denying permissive withdrawal. The Court acknowledges that the Bankruptcy Court may not have authority to render a final adjudication as to some of the claims and counterclaims and that withdrawal to this Court for a jury trial may eventually become necessary. *See In re: FKF 3, LLC*, No. 13-CV-3601, 2016 WL 4540842, *19 (S.D.N.Y. Aug. 30, 2016). Despite the prospect of some duplicative work or a possible trial in this Court, the increased efficiency in keeping this matter with the Bankruptcy Court more than offsets this potential cost. Since the initiation of the Light Entities bankruptcy proceedings, Judge Robert Littlefield has had the opportunity to develop intimate knowledge of the complex facts associated with the Light Entities' business practices. On the other hand, while some matters briefly came before this Court in Kyocera's action against Goldstein and the Liebs, that case was dismissed by stipulation before the Court had the opportunity to familiarize itself with the Light Entities' complicated business relationship with Kyocera.

Given the complexities of the underlying facts along with the significant questions of bankruptcy law contained in the Light Entities' claims, the Court declines to withdraw the reference from the Bankruptcy Court.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

8

**ORDERS** that Kyocera's motion to withdraw reference (Dkt. No. 1) is **DENIED** with leave to renew if and when the case is ready for trial; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 10, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge